IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM BELCOURT,<br><br>Plaintiff,<br><br>vs.<br><br>GRIVEL, S.L.R. and GIOACHINO GOBBI,<br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:08-CV-902-TC |

This case is before the court on Defendants Grivel, S.L.R. and Gioachino Gobbi's motion to compel arbitration. The Defendants argue that contracts between the parties require that this dispute be settled by arbitration. Because the Defendants' active engagement in the litigation before this court is inconsistent with the right to arbitrate, the Defendants have waived the right to compel arbitration and the motion is **DENIED**.

## BACKGROUND

This case arises out of a business dispute between Plaintiff William Belcourt and Defendants Grivel, a mountaineering equipment firm based in Italy, and its owner, Gioachino Gobbi (Defendants). Mr. Belcourt, along with Mark Twight, was an owner of GNA Corporation (GNA). GNA was created by Mr. Belcourt and Mr. Twight to be the North American distributor for Grivel. Mr. Belcourt and Mr. Twight traveled to Italy to sign a series of contracts between themselves and the Defendants. There is some dispute about which party initiated the negotiations and where the majority of negotiations took place. But the record is clear that the contracts were drafted in Italian

and translated into English. Those contracts contained an agreement to arbitrate disputes arising out of the subject matter covered by the contracts.

This case was filed on November 20, 2008, by Mr. Belcourt alleging breach of contract, breach of the implied covenant of good faith and fair dealing, negligent or intentional misrepresentation, breach of fiduciary duty, and interference with prospective economic advantage. A default certificate was filed on March 4, 2009. Defendants filed a motion to set aside the default on March 6, and this court granted the Defendants' motion on April 21. On April 16, the Defendants filed a motion to quash the summons.[1]

On May 4, 2009, the Defendants filed an answer, third-party complaint and counterclaim. In their answer, the Defendants specifically consented to jurisdiction and venue in the District of Utah. The third-party complaint brought in GNA and Mr. Twight as third-party defendants (Third-Party Defendants). On May 28, Mr. Belcourt filed a motion to dismiss the counterclaim and a motion for partial summary judgment. On June 9, Mr. Twight filed a motion to dismiss. On June 26, 2009, Mr. Belcourt filed a motion for leave to amend the complaint. The court scheduled a hearing on these motions (which were fully briefed on July 24) for August 14, 2009. On July 13, the parties submitted a report of attorney planning meeting. On July 20, Magistrate Judge Nuffer issued a scheduling order.

On August 10, 2009, the Defendants filed a motion to compel arbitration. Based on that motion, the court struck the hearing scheduled for August 14 and ordered briefing on the motion to compel arbitration.

---

[1]Based on the agreement of the parties, the motion to quash the indictment is **DENIED** as moot.

**ANALYSIS**

There is "a liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). That presumption is even stronger in the context of international commercial arbitration agreements. The United States is a party[2] to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), which is a treaty requiring signatories to honor arbitration agreements made in an international commercial context. Enforcement of the New York Convention is required by federal law. 9 U.S.C. § 201. In some contexts, arbitration agreements covered by the New York Convention are enforced more stringently than analogous domestic agreements. As the Supreme Court has explained,

> we conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985) (holding that anti-trust claims, which are excluded from arbitration under the Federal Arbitration Act, must be sent to arbitration if the New York Convention applies).

The Tenth Circuit has held that courts should perform a "very limited inquiry . . . when presented with a request to refer an international dispute to arbitration:"

(1) Is there an agreement in writing to arbitrate the subject of the dispute?

---

[2]Italy is also a signatory to the convention.

(2) Does the agreement provide for arbitration in the territory of the signatory of the Convention?

(3) Does the agreement arise out of a legal relationship whether contractual or not, which is considered as commercial?

(4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

If these questions are answered in the affirmative, a court is <u>required</u> to order arbitration.

Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 959 (10th Cir. 1992) (citation omitted). "Only if a court finds that the agreement 'null and void, inoperative or incapable of being performed,' Convention, art. II(3), may it act to the contrary." <u>Id.</u>

In the domestic setting, the right to arbitration is backed by "a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1488 (10th Cir. 1994). Despite this strong policy, "the right to arbitration, like any other contract right, can be waived." <u>Id.</u> at 1489 (quotation omitted). The test for determining whether the right to arbitration has been waived is well established. The court must examine:

(1) whether the party's actions are inconsistent with the right to arbitrate;

(2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate;

(3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;

(4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings;

(5) whether important intervening steps (e.g., taking advantage of judicial discovery

procedures not available in arbitration) had taken place; and

(6) whether the delay affected, misled, or prejudiced the opposing party.

Id. (quotations omitted).

Under Tenth Circuit precedent, a court may only refuse to enforce a valid international arbitration agreement if it is "null and void, inoperative or incapable of being performed." The Tenth Circuit has not considered whether waiver falls under the "null and void" exception. But courts considering this question have concluded that because the right to arbitration is a contract right, it, just like any other contract right, can be waived. Apple & Eve, LLC v. Yantai North Andre Juice Co. Ltd., 610 F. Supp. 2d 226, 230 (E.D.N.Y. 2009); Skordilis v. Celebrity Cruises, Inc., 2009 WL 129383 (S.D. Fla. 2009) (holding cruise ship operator waived arbitration clause in dispute with foreign citizen after litigating in state court for fifteen months and then removing to federal court on the eve of trial). This must be balanced against the Tenth Circuit's holding in Riley "that the 'null and void' exception in the Convention is to be narrowly construed." 969 F.2d at 960. The court agrees with the district courts that have considered this question and concludes that a contract right to compel arbitration may be waived, thereby rendering the agreement null and void, where a party has failed to timely assert that right and has participated in litigating the claims in court.

Accordingly, the court will consider the factors described in Metz, 39 F.3d at 1488. First, the Defendants' actions have been inconsistent with the right to arbitrate. By consenting to jurisdiction and venue, the Defendants appeared willing to proceed with litigating this dispute. In addition, the Defendants appeared before the court at the hearing to set aside the default certificate and have made numerous filings. At no time did the Defendants mention the right to arbitrate or indicate that they would be seeking a remedy outside the court. Although the delay in seeking

arbitration may not have been particularly lengthy and significant discovery has not yet been undertaken, some important litigation steps have been taken. The four months following the setting aside of the default certificate were extremely active in this case and included the pre-trial scheduling order and complete briefing of three major motions.

Importantly, the Defendants have filed both a counterclaim and a third-party complaint in this case. These actions brought new parties into the litigation (the Third-Party Defendants) and precipitated the filing of defensive motions by Mr. Belcourt and the Third-Party Defendants. The filing of a counterclaim is an important consideration in the waiver analysis. Robinson v. Food Serv. of Belton, Inc., 415 F. Supp. 2d 1221, 1226 (D. Kan. 2005) ("Defendants' counterclaim, filed with no request for a stay in the proceedings, exemplifies defendants' use of the federal court system to hash out legal issues which arbitration would resolve or preclude. . . . [T]he counterclaim is strong evidence defendants intended to waive their right to compel arbitration.").

The court must consider "whether the delay affected, misled, or prejudiced the opposing party." Metz, 39 F.3d at 1489. In this case the failure to make a request to the court to stay the proceedings and the Defendants' consent to jurisdiction and venue without mention of the right to arbitrate certainly led the opposing parties to believe that the Defendants planned to litigate this matter in the District of Utah. This caused the parties to spend significant time and resources defending against the counterclaim and third-party complaint.

Finally, even after the motion to compel arbitration, it is not clear that the Defendants do not wish to waive the right to arbitrate. The reply memorandum submitted by the Defendants appears

to indicate a willingness to proceed in this court provided Italian law is applied to the claims.[3] (Def.'s Reply Mem. at 6-7.) Furthermore, at the hearing on this motion, the Defendants represented to the court a willingness to proceed in the District of Utah even if their motion were granted, provided Italian law is applied. These representations are inconsistent with the right to arbitrate and indicate waiver.

## ORDER

For the foregoing reasons, the Defendants have waived the right to arbitrate this dispute and the motion to compel arbitration (Docket No. 62) is **DENIED**. The Defendants' motion to quash service (Docket No. 23) is **DENIED** as moot.

DATED this 6th day of November, 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge

---

[3]The issue of choice of law is not before the court at this time and the court makes no ruling on the applicable law.